## Case No. 16,683.

### UNITED STATES v. WHITE et al.

[6 N. Y. Leg. Obs. 230.]

District Court, S. D. New York. June 6, 1848.

SEAMEN — ENDEAVOR TO MAKE A REVOLT — SHIPPING ARTICLES—DEVIATION.

1. Seamen shipped under articles for a voyage from New Orleans to Havre, and thence to one or more ports in Europe, and thence back to a port of discharge in the United States. The master, intending to make Charleston the final port of discharge, stopped at New York,

and landed passengers and freight. *Held*, that the seamen were not guilty of the offence of "endeavoring to make a revolt," in refusing to get the ship under way, and doing further duty, for the purpose of proceeding to Charleston.

2. The shipping articles must be referred to, and would furnish "prima facie" evidence as to the right of the master to require the seamen to proceed any further.

3. Shipping articles must specify all ports or places of stoppage for purposes of this character.

4. The shipping articles in question not containing any mention of the port of New York, the case in question presented a clear unauthorized deviation, which discharged the seamen from all blame in refusing to proceed further.

5. To justify a deviation from the direct voyage contained in the articles, the same must be unpremeditated, and caused by a "vis major."

[This was an indictment against Charles W. White, John Collins, William Stearns, Edward Dewey, Francis McGoin, William Jones, John Webster, Philip Pease, and Duncan Thompson upon the charge of endeavoring to make a revolt.]

B. F. Butler, U. S. Atty., and W. M. Evarts, for the United States.

C. Donahue and W. R. Bebee, for prisoners.

MORTON, Commissioner. The prisoners are brought before me on a charge of an endeavor to make a revolt on board the ship Archelaus, under the 2d section of the act of congress of 1835 [4 Stat. 775]. The testimony on the part of the United States and the admission of the prisoners' counsel present the following facts: The prisoners all shipped at New Orleans, and, with the exception of two of the men, signed shipping articles for a voyage from New Orleans to Havre, and thence to one or more ports in Europe, should the master require, and thence back to a port of discharge in the United States. At Havre the ship took on board 250 passengers and 8 cases of glassware for the port of New York, and the cargo of the John Cadmus (a vessel bound from Liverpool, that had put into Havre in distress), to carry on freight to Charleston. The Archelaus arrived at this port on the 2d June, landed her passengers and their baggage. The 8 cases of glass, belonging to some of the passengers, were also landed and entered at the custom house. The captain was then about sailing from this port for Charleston, to deliver the remainder of his cargo, when the crew, claiming that the voyage ended on the arrival at this port, refused to proceed further in the ship. An affidavit being made by Capt. Boutelle that the crew had endeavored to make a revolt, a warrant was issued by the commissioner, and the prisoners brought up for commitment.

The decisions of the courts of admiralty, both of England and our own country, agree upon the subject of the rights and duties of seamen in reference to commercial voyages, and, while recognizing the great importance of commerce, both as a subject of public and individual mercantile welfare, yet require, as absolutely indispensable for the true interests of all, that a clear and authentic declaration of the details of every voyage shall be contained in the shipping articles, thus providing an authoritative source, readily to be appealed to, for a solution of any difficulties that may arise upon this most important element of the maritime contract, and which is now directly in question. The law will not tolerate that, under equivocal or ambiguous terms contained in the articles, or at the mere option of masters or owners, voyages may be prolonged or deviations made. The courts, besides considering that such assumptions violate the legal rights of seamen, further regard them with clear disapprobation, as having a tendency to break up and defeat those subjects of just and humane consideration supposed possible to exist even in behalf of sailors, in the shape of domestic ties and obligations, "and the natural desire to return to their homes." In cases where the refusal of seamen to proceed on a voyage has been charged against them criminally, as constituting the offence of "endeavoring to make a revolt," or is set up as working a forfeiture of wages, the courts refer at once to the shipping articles, for the purpose of determining the rights and responsibilities between the sailor and the public, and the master and owners. The law upon this subject is unequivocal and imperative, declaring that the shipping articles must contain a statement of the precise voyage or voyages for which the sailor contracts, and if a deviation from such specification is carried out, not caused by a "vis major," without the consent of the mariner, by going to intermediate ports, and landing or receiving on board passengers or freight, or an ulterior voyage is attempted to be superadded or substituted, and the sailors refuse to do further duty, such conduct on their part is justifiable, and does not either forfeit their wages, or render them liable criminally, under the act in question, for "an endeavor to make a revolt." U. S. v. Matthews [Case No. 15,742]; The Countess of Harcourt, 1 Hagg. Adm. 248; 1 Stat. 131; Act 1790, c. 29, § 1.

The present case is clearly embraced by the decision of Judge Story, above referred to, in U. S. v. Matthews [supra], whether the port of New York is to be considered as the port of discharge, or only as an intermediate port. If the port of discharge, there was no color of right to require the crew to navigate her afterwards to Charleston. If the port of Charleston was contemplated by the master as her port of discharge, then coming to the port of New York, not being contained in the shipping articles, constituted so plain a deviation from the voyage as discharged the seamen from all obligation of proceeding further with the vessel. They are therefore entitled forthwith to be discharged from arrest. Order accordingly.